UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

**UNITED STATES OF AMERICA**

v.                                                              Case No.: 2:25-cr-238-KCD-NPM

**JOSEPH ROCCO GIANCOLA**

_____

**DEFENDANT'S MOTION TO DISMISS INDICTMENT FOR FAILURE TO STATE AN OFFENSE UNDER 18 U.S.C. § 875(c)**

Defendant, JOSEPH ROCCO GAINCOLA ("Mr. Giancola"), by and through undersigned counsel, moves to dismiss the indictment charging a violation of 18 U.S.C. § 875(c) on the grounds that the indictment fails to state an offense. The alleged threat was directed at Immigration and Customs Enforcement ("ICE") as a government agency, not at any specific natural person, contrary to the plain language and statutory construction of § 875(c), which criminalizes threats only against natural persons. Moreover, the indictment does not allege that the defendant explicitly threatened to shoot ICE personnel or otherwise make a communication meeting the Eleventh Circuit's standard for a "true threat."

Because the indictment's allegations, even when viewed in the light most favorable to the government, are legally insufficient to charge a violation of § 875(c), dismissal under Federal Rule of Criminal Procedure 12(b)(3)(B) is warranted to prevent unconstitutional and legally unfounded prosecution.

**PREFATORY NOTE**

Undersigned counsel conferred with the assigned Assistant United States Attorney, Patrick Darcey, regarding the filing of this motion.[1] Mr. Darcey does **not** object to the untimeliness of the motion, however, does object to this Court granting the motion.

**FACTS**

According to the report by the Department of Homeland Security (DHS), "[o]n August 6, 2025, a non-specific social media posting came to the attention of Protection Intelligence. The social media BlueSky Social user Cain [Delon] 'aka' Joseph [Giancola] stated**, 'Shoot the ICE Nazis dead, Shoot ICE gestapo dead, Get your gun and shoot them dead and I'd rather piss on Hogans grave Etc.'**"

The DHS report goes on to say that Mr. Giancola's posting was a reply to a social media post involving an ICE operation. The DHS report was made to identify, locate and potentially prosecute Mr. Giancola, "based on the current threat environment towards ICE," noting it as a potential ICE Officer and Personnel Safety concern. No ICE Officers or Personnel were identified – no information that any officer or personnel were placed in fear from Mr.

---

[1] Mr. Darcey asked that counsel file the motion on or after January 16, 2025, because he would be on military leave and would need time to respond.

Giancola's posts. Additionally, no geographic area of concern was identified or noted as being in the vicinity of Mr. Giancola's location.

On October 30, 2025, Mr. Giancola's house was violently raided – his daughter and grandchildren were faced with guns and aggressive language/screaming. No weapons or contraband were found in the home, however, compact discs, documents, flash drives, SD cards and an Apple iPhone were seized. Mr. Giancola was interviewed during the raid of his home. After *Miranda* warnings were given, Mr. Giancola was cooperative and answered the Agent's questions. The Agent explained to him that they were there to execute a search warrant because of his social media posts and to discuss specific messages and the intent behind them.[2] Mr. Giancola agreed to answer questions. He admitted to various posting he made to the social media platform, BlueSky under the name of "Cain Delon." The Agent showed Mr. Giancola numerous screenshots of his BlueSky postings, and he replied that he wasn't a threat because he does not have a gun and doesn't know how to use one. He went on to say he has a "[] First Amendment right to say

---

[2] Other posts identified in the discovery provided by the government:
- "Get your guns and shoot them dead." — 2025-07-11, 9:55 PM.
- "Shoot the ICE Nazis dead." — 2025-07-22, 11:48 AM.
- "Shoot ICE gestapo dead." — 2025-07-30, 11:49 AM; also 2025-07-09, 5:25 PM.
- "Start shooting the ice gestapo dead." — 2025-07-11, 6:53 PM.
- "I would shoot them dead. Gestapo Lives Don't Matter." — 2025-07-10, 4:17 PM.
- "Shoot these thugs dead." — 2025-07-21, 5:58 PM.
- "Shoot them." — 2025-07-13, 10:43 AM.

3

something like that." When asked by the Agent if he could see why the posts were concerning, Mr. Giancola responded that he was "giving his opinion of what he thinks they should do." Upon further questioning, Mr. Giancola told the Agent that "individuals write all kinds of things on social media that mean absolutely nothing…and that he was absolutely not a threat to anyone." As the interview continued, Mr. Giancola continued to assert that he had no intention of killing or hurting anyone. He described his posts as "political rhetoric," and protected political speech. At the end of the interview Mr. Giancola was placed under arrest for online threats of violence.

On November 12, 2025, Mr. Giancola was indicted on one count of Interstate Transmission of Threat to Kidnap or Injure, in violation of 18 U.S.C. § 875(c).(Doc. 18). The indictment specifically identifies the social media post stating, "I would shoot them dead. Gestapo Lives Don't Matter." [3] Mr. Giancola is currently on pretrial home detention. (Doc. 11).

## SUMMARY OF ARGUMENT

This motion presents two independent grounds for dismissal of the indictment. First, 18 U.S.C. § 875(c) applies only to threats against natural persons, not government agencies like ICE. The statutory language, structure,

---

[3] 

4

and established principles of statutory construction all demonstrate that Congress intentionally limited § 875(c) to threats against natural persons, while explicitly extending other subsections of the same statute to cover non-natural entities.

Second, the alleged communication does not constitute a "true threat" under § 875(c) and First Amendment jurisprudence. Without an explicit statement threatening to shoot or otherwise harm ICE officers or personnel, the communication lacks the specificity and clarity required to constitute a true threat. Vague or ambiguous statements directed at government agencies may reasonably be interpreted as political rhetoric or expressions of anger rather than genuine threats to commit violence.

I.   **18 U.S.C. § 875(c) APPLIES ONLY TO THREATS AGAINST NATURAL PERSONS, NOT GOVERNMENT AGENCIES**

   A.   **Section 875(c) of Title 18 of the United States Code criminalizes only threats directed at natural persons, not government agencies such as Immigration and Customs Enforcement (ICE). The statutory language, structure, and established principles of statutory construction all demonstrate that Congress intentionally limited the scope of § 875(c) to threats against natural persons, rendering the indictment in this case legally insufficient.**

   1.   **The Plain Language of § 875(c) Limits Its Application to Natural Persons**

The statutory text of § 875(c) provides: "Whoever transmits in interstate or foreign commerce any communication containing any threat to kidnap any

person or any threat to injure the person of another, shall be fined under this title or imprisoned not more than five years, or both." 18 U.S.C. § 875. This language unambiguously restricts the statute's application to threats against natural persons.

The statute's reference to "any threat to kidnap any person" and "any threat to injure the person of another" inherently applies only to natural persons. 18 U.S.C. § 875(c). Only natural persons can be kidnapped or physically injured in the conventional sense of those terms. A government agency like ICE cannot be kidnapped or suffer physical injury as contemplated by the statute.

### 2. Statutory Structure Confirms § 875(c) Applies Only to Natural Persons

The structure of § 875 as a whole provides compelling evidence that Congress intentionally limited § 875(c) to threats against natural persons. While § 875(c) refers only to "person," the immediately following subsection, § 875(d), explicitly expands its scope to include "any person, firm, association, or corporation." 18 U.S.C § 875. Section 875(d) states: "Whoever, with intent to extort from any person, firm, association, or corporation, any money or other thing of value, transmits in interstate or foreign commerce any communication containing any threat to injure the property or reputation of the addressee or of another..." 18 U.S.C. § 875.

This distinction between the two adjacent subsections is significant and deliberate. The Eleventh Circuit has recognized the principle that "where Congress includes particular language in one section of a statute but omits it in another section of the same Act, it is generally presumed that Congress acts intentionally and purposely in the disparate inclusion or exclusion." *United States v. Pate* 84F.4th 1196, 1202 (11th Cir. 2023). The fact the Congress specifically chose not to include other entities in § 875(c), strongly indicates that Congress intentionally limited § 875(c) to natural persons, while explicitly extending § 875(d) to cover non-natural entities.

### 3. The Nature of Prohibited Threats in § 875(c) Applies Only to Natural Persons

The specific types of threats prohibited by § 875(c) – threats to "kidnap any person" or to "injure the person of another" – further confirm that the statute applies only to natural persons. The concept of kidnapping inherently applies only to natural persons, as reflected in federal kidnapping statutes that refer to any person being "unlawfully seized, confined, inveigled, decoyed, kidnapped, abducted, or carried away." 18 U.S.C. § 1201.

Similarly, the phrase "threat to injure the person of another" in § 875(c) refers to physical injury to a natural person. This interpretation is supported by case law defining "true threats" as "'serious expression[s]' conveying that a speaker means to 'commit an act of unlawful violence.'" *Counterman v.*

7

*Colorado*, 600 U.S. 66, 74 (2023), (*quoting Virginia v. Black*, 538 U.S. 343, 359 (2003)). The focus on "unlawful violence" against "individuals" underscores that § 875(c) contemplates threats of physical harm to natural persons, not abstract threats against government agencies.

### 4. The Indictment Fails to State an Offense Under § 875(c)

An indictment must set forth the essential elements of the offense to be valid. *United States v. Martinez*, 800 F.3d 1293, 1295 (11th Cir. 2015). Under Federal Rule of Criminal Procedure 12(b)(3)(B), an indictment may be dismissed if it fails to state an offense. Fed. R. Crim. P. 12. When reviewing such a dismissal, courts must determine whether "the factual allegations in the indictment, when viewed in the light most favorable to the government, were sufficient to charge the offense as a matter of law*." United States v. Sharpe,* 438 F.3d 1257, 1263 (11th Cir. 2006).

In this case, the indictment alleges threats directed at ICE as an agency, not at any specific natural person. The government does not identify ICE in the indictment, but simply identifies the social media post as stating, "I would shoot them dead. Gestapo Lives Don't Matter." (Doc. 18). Because § 875(c) applies only to threats against natural persons, the indictment fails to state an offense under the statute. Since ICE as an agency cannot be kidnapped or physically injured as contemplated by § 875(c), the alleged threats against ICE

8

cannot constitute a "true threat" under the statute. As such, the indictment in this case must be dismissed.

## II. THE ALLEGED COMMUNICATION DOES NOT CONSTITUTE A "TRUE THREAT" UNDER § 875(c) AND FIRST AMENDMENT JURISPRUDENCE

**A. The alleged communication directed at Immigration and Customs Enforcement (ICE) lacks the specificity and explicitness required to constitute a "true threat" under 18 U.S.C. § 875(c) and First Amendment jurisprudence. The indictment should be dismissed pursuant to Federal Rule of Criminal Procedure 12(b)(3)(B) because it fails to state an offense that satisfies both the statutory requirements and constitutional limitations on criminalizing speech.**

### 1. Legal Standard for "True Threats" Under § 875(c)

Section 875(c) criminalizes the transmission in interstate or foreign commerce of "any communication containing any threat to kidnap any person or any threat to injure the person of another." 18 U.S.C. § 875. To constitute a violation of this statute, the communication must contain a "true threat." A "true threat" is defined as "a serious threat—not idle talk, a careless remark, or something said jokingly—that is made under circumstances that would place a reasonable person in fear of being kidnapped, killed, or physically injured." *United States v. Fleury*, 20 F.4th 1353, 1370 (2024). True threats are distinguished from "jests, hyperbole, or other statements that when taken in context do not convey a real possibility that violence will follow."

9

*Counterman v. Colorado,* 600 at 74. They are "serious expressions conveying that a speaker means to commit an act of unlawful violence." *Id.*

### 2.  First Amendment Protection for Political Speech

The First Amendment provides heightened protection for political speech, even when critical of government agencies like ICE.

Vague or ambiguous statements may reasonably be interpreted as hyperbole, political rhetoric, or expressions of anger rather than genuine threats to commit violence. The Supreme Court has emphasized that "true threats lie outside the bounds of the First Amendment's protection." *Counterman v. Colorado*, 600 U.S. at 74. However, to qualify as a true threat, the statement must be a "serious expression conveying that a speaker means to commit an act of unlawful violence." *Id*. The mere fact that a statement is directed at a government agency does not automatically transform it into a true threat.

In this instance, at most, Mr. Giancola made careless remarks regarding his feelings towards ICE, based on what he perceived as unwarranted aggression towards undocumented individuals. There was no real possibility that he would travel to the area where ICE was located or follow through with any violence. He is a 72-year-old grandfather who babysits his grandchildren during the day, does not own any guns, and has never engaged in violent

behavior. No reasonable ICE agent or personnel would be in fear for their lives based on Mr. Giancola's social media posts.

## CONCLUSION

The indictment in this case fails to allege a violation of 18 U.S.C. § 875(c) and must be dismissed. As stated above, 18 U.S.C. § 875(c) applies only to threats against natural persons, not government agencies like ICE. Mr. Giancola's speech did not constitute a "true threat," as he did not threaten to shoot an ICE agent or personnel. Although his statements may be viewed as unpleasant or abusive, they amount to nothing more than political rhetoric and an expression of anger.

For the foregoing reasons, Mr. Giancola respectfully requests that this Court grant the motion to dismiss the indictment for failure to state an offense under 18 U.S.C. § 875(c) pursuant to Federal Rule of Criminal Procedure 12(b)(3)(B).

Respectfully submitted this 18th day of January 2026.

    Charles Pritchard, Esq.
    Federal Defender
    Middle District of Florida

    By: */s/ Yvette C. Gray*
    Yvette C. Gray, Esq.
    Assistant Federal Defender
    Arizona Bar No. 016516
    2075 W. First Street, Suite 300

Fort Myers, FL 33901<br>
Telephone No. 239-334-0397<br>
Facsímile No. 239-334-4109<br>
E-Mail: Yvette_Gray@fd.org

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on the 18th day of January 2026 the foregoing was electronically filed with the Clerk of Court using the CM/ECF system, which will electronically send notice to all counsel of record.

/s/ Yvette C. Gray
Yvette C. Gray, Esq.
Assistant Federal Defender